UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

JAMES R. VANCE,

             Plaintiff,                          Case No.  1:14-CV-1186

v.                                        HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant,

———————————————————/

## OPINION

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff James Vance seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

### STANDARD OF REVIEW

      The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged

with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 52 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 16, 41.)  He completed high school and some trade classes, and was previously employed as an injection molding machine tender and assurance control monitor. (Tr. 43–44, 70.) Plaintiff applied for benefits on January 23, 2012, alleging that he had been disabled since October 19, 2010, due to left knee and right leg pain, blindness in the left eye, and vision problems. (Tr. 82, 179–82.)  Plaintiff's application was denied on April 2, 2012, after which time he requested

a hearing before an ALJ. (Tr. 97–100, 105–07.) On April 10, 2013, Plaintiff appeared with his counsel before ALJ Donna Grit for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 37–79.) In a written decision dated June 20, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 16–36.) Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–6.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined Plaintiff's claim failed at the fifth step of the evaluation.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 21.)  At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) blind left eye; (2) status post left knee replacement and revision; (3) right Achilles bursitis; and (4) migraines. (Tr. 21.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 22–23.)  At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a); specifically, the claimant can occasionally lift and carry ten pounds; can frequently lift and carry less than ten pounds; can stand and walk for at least two hours in an eight hour workday; can sit for at least six hours in an eight hour workday; can never climb ladders, ropes, and scaffolds; can climb ramps and stairs less than frequently; can occasionally balance, crouch, and crawl; can stoop without limitation; can occasionally use foot pedals with the left lower extremity; can never use foot pedals with the right lower extremity; should not have objects presented from the left on a belt or conveyor; can work in environments with noise intensity of moderate or less; cannot work at unprotected heights; and cannot drive commercial vehicles.

(Tr. 23.)  The ALJ also found at the fourth step that Plaintiff could not perform any of his past relevant work. (Tr. 28.)

4

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 6,000 inspector positions in the state of Michigan which an individual similar to Plaintiff could perform. (Tr. 72–73.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 19, 2010, (the alleged onset date) through June 20, 2013, (the date of the decision). (Tr. 29–30.)

### DISCUSSION

Plaintiff presents the following claims of error:

1.   The ALJ failed to give good reasons for giving less than controlling weight to the opinion of Plaintiff's treating neurologist;

2.   The ALJ improperly discounted Plaintiff's subjective statements regarding his migraines; and

3.   The ALJ presented an incomplete RFC hypothetical to the VE, leading to a lack of substantial evidence at step 5.

(ECF No. 11, PageID.528–29.)  The Court will discuss the issues below.

**1.    Treating Physician.**

Plaintiff first claims that the ALJ erred in failing to give controlling weight to the opinion of Dr. Roya Vakili.  Plaintiff specifically argues that the ALJ failed to give "good reasons" for rejecting the opinion. (ECF No. 11, PageID.538–42.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).   It appears undisputed that Dr. Vakili qualifies as a treating physician.

The deference afforded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2 (citing *Shavers*, 839 F.2d at 235 n.1; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of*

6

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Plaintiff's first visit in the record with Dr. Roya Vakili occurred on September 7, 2011. Plaintiff stated he had headaches three to four times a month, that they had been worsening since October 2010, and described the triggers of the headaches as reading for too long and artificial lights. (Tr. 484.) Plaintiff was placed on the drug Pamelor, and told to follow up in six to eight weeks. (Tr. 487.) On October 25, 2011, Plaintiff met with Dr. Vakili for a follow up. He reported feeling better, but the headaches seemed to increase in frequency, as he stated he now had headaches a few times a week. (Tr. 477.) Plaintiff's Pamelor dosage was increased and he was told to follow up in six months. (Tr. 480.)

Plaintiff was seen for follow up on April 25, 2012. (Tr. 473.) Treatment notes stated "no changes" regarding his headaches, though Dr. Vakili also noted that Plaintiff "remained on Pamelor for several months with improvement. He states since last visit he stopped taking Pamelor and [is] doing well. He changed his life style and avoid[ed] doing any activities that trigger his migraines. He avoids bright light and strenuous activities. He can stop the headaches by laying down and relaxing. He feels better resting his eyes. He has found weather changes affect his migraines." (Tr. 473.) Dr. Vakili noted that it was "Ok to stop Pamelor; Patient has made changes in his life to avoid migraines; such as avoiding bright lights, activities triggering his migraines." (Tr. 475.) Plaintiff was told to follow up as needed. (Tr. 475.)

On September 7, 2012, Plaintiff met with Dr. Jordan Taylor, of the same practice as Dr. Vakili. Plaintiff again stated there was no improvement in his headaches, and that he had tried

Pamelor without success, as the drug was no more successful than over the counter medication. (Tr. 418.) Dr. Taylor believed Plaintiff was overusing medication, told Plaintiff to stop taking over the counter medication, and placed Plaintiff on Elavil and Prednisone. (Tr. 418.)

On December 12, 2012, Plaintiff again met with Dr. Vakili, he reported no change since his visit with Dr. Taylor. (Tr. 468.) Dr. Vakili indicated that the headaches were likely from pain medication overdose. (Tr. 470.) Plaintiff was placed on Ultram and Inderal, told to avoid triggers, and advised to take medication only as prescribed. (Tr. 470.)

On April 18, 2013, Dr. Vakili filled out a medical assessment form regarding Plaintiff's physical RFC. (Tr. 461–66.) The doctor opined that Plaintiff was far more limited than that recognized by the ALJ. Dr. Vakili stated that Plaintiff suffered frequent headaches anywhere from several times a week to daily. (Tr. 462.) The headaches were triggered by bright lights, stress, exercise, watching television, and reading. (Tr. 462.) Dr. Vakili stated that Plaintiff had tried to avoid his triggers and had used multiple medications, without experiencing any improvement. (Tr. 464.) As such, Dr. Vakili opined that Plaintiff would need to take unscheduled breaks during a typical workday at least several times a week. (Tr. 464–65.) These breaks would last anywhere from thirty minutes to hours. (Tr. 465.) Plaintiff would also be expected to miss work completely more than four times a month. (Tr. 465.) After summarizing Dr. Vakili's statements, the ALJ gave the opinion only "limited weight" noting that, "it is inconsistent with the evidence of record. The record shows that the claimant's headaches could be accommodated by mitigating some of their triggers, such as working in environments with moderate or less noise intensity levels and with sedentary work." (Tr. 27.) Plaintiff claims that in this, the ALJ failed to provide good reasons for giving the opinion of his treating physician less than controlling weight. The Court agrees.

8

While Dr. Vakili's treatment notes may provide some support for the proposition that Plaintiff can accommodate his headaches by avoiding triggers, it is not the case, as the ALJ suggests, that loud noises is among them.  Indeed the only mention in the record regarding a sensitivity to noise is found in a May 2011 treatment note from Dr. Ohn.  That note, however, only lists sensitivity to noise as a symptom, rather than a trigger, of Plaintiff's headaches. (Tr. 350.)  By noting that noise was a trigger of Plaintiff's headaches, and then including a limitation regarding noise in the RFC, the ALJ apparently believed Plaintiff needed a RFC that allowed him to avoid his triggers.  (Tr. 23, 27.)  However, as noted above, substantial evidence does not support a conclusion that noise was a trigger of Plaintiff's headaches.  To the contrary, light is repeatedly and consistently identified as a trigger, but the RFC includes no provision for avoiding light.  This, in turn, leaves the RFC limiting Plaintiff's exposure to environments with more than moderate noise–and with no limitation for light–unsupported by substantial evidence.  By focusing on noise, rather than artificial lights, the Court is unable to "trace the path of [the ALJ's] reasoning" on the RFC.  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985). Accordingly, this matter will be remanded under sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should explain the inconsistency between the RFC and Plaintiff's triggers.

### 2.    Credibility.

At the administrative hearing, Plaintiff argued he was further impaired than that recognized by the ALJ.  He testified that he experienced migraines at least three times a week and that they lasted between two to three hours. (Tr. 55.) The migraines caused pain and impaired his

9

ability to concentrate.  Plaintiff also testified that he needed a cane to walk. (Tr. 52–53, 56–57.)  The

ALJ discounted Plaintiff's subjective complaints as follows:

> I find that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and limiting
> effects of these symptoms are not entirely credible for the reasons explained
> in this decision.  While the claimant no doubt was limited by his chronic
> headaches, he acknowledged that he experienced relief with relaxation
> techniques, lying down, and medication.  Moreover, he sought and received
> only sporadic treatment for his headaches . . . .  Moreover, the claimant
> admitted that he could drive, vacuum, cook, mop, and empty the trash.  These
> activities show that the claimant did not require an assistive device.

(Tr. 26.)  Plaintiff claims the ALJ's decision to discount Plaintiff's credibility is unsupported by

substantial evidence. (ECF No. 11, PageID.542–46.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical

impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002)

(same). As the relevant Social Security regulations make clear, however, a claimant's "statements

about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R.

§ 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting

20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009).

Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation

are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1) whether
> objective medical evidence confirms the severity of the alleged pain arising
> from the condition; or (2) whether the objectively established medical
> condition is of such a severity that it can reasonably be expected to produce
> the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan*
standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly,  "subjective complaints may support a finding of disability only where
objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship
v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence
fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and
discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative
record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be
accorded great weight and deference." *Id.*; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528,
536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and [her] examiner, as the fact-finders, to pass
upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court
to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial
evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a
finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820
F.2d 777, 780 (6th Cir. 1987).  In fact, "an administrative law judge's credibility findings are
virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013)
(citation omitted).

Substantial evidence may support a conclusion that Plaintiff's migraines did not limit
him to a greater extent than that recognized by the ALJ. At the administrative hearing, Plaintiff's
testimony mostly centered on the pain in his ankle, rather than his headaches.  Plaintiff stated, for
example, that it was the pain in his legs that caused him to leave work. (Tr. 47–49, 67.)  The length

11

between visits with Dr. Vakili–as long as six months–is also inconsistent with the severity alleged. (Tr. 461.)  But the ALJ's apparent failure to recognize artificial lights as a consistent trigger, and the ALJ's apparent confusion between triggers and symptoms of the headaches, raise legitimate questions about the issue.  The ALJ will have the opportunity to clarify the basis for his conclusion on remand.

   Plaintiff further argues that the ALJ erred in relying on his activities of daily living to discount his credibility, noting that the Sixth Circuit has stated that the ability to complete daily activities are not inconsistent with being unable to pursue substantial gainful activity. (ECF No. 11, PageID.545 (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)). Plaintiff, however, takes the ALJ's discussion of his activities of daily living out of context. Here, the ALJ based the RFC finding on the objective medical record, and the discussion of Plaintiff's daily activities was focused on the decision to discount Plaintiff's subjective statements. The ALJ did not err in citing to this evidence in such a context. *See Keeton v. Comm'r of Soc., Sec*., 583 F. App'x 515, 532 (6th Cir. 2014) (citing 20 C.F.R. § 404.1572 and quoting *Walters*, 127 F.3d at 532) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, an ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.") (internal quotations omitted). Moreover, the ALJ's conclusion that Plaintiff did not need a cane is supported by substantial evidence.  Plaintiff admitted that he bought the cane on his own, and that no physician had prescribed the cane. (Tr. 53.) Plaintiff further testified that he could vacuum, drive, cook, and do chores. (Tr. 57–58.)  Accordingly, Plaintiff's claim of error on the basis of this finding alone is rejected.

12

Plaintiff relatedly presents a third claim of error, contending that the ALJ erred by refusing to pose and adopt a hypothetical to the VE that incorporated his subjective complaints. (ECF No. 11, PageID.546.)  A hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact the claimant's residual functional capacity–that is the ALJ's job. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The ALJ, having found that Plaintiff's subjective complaints were not fully credible, was not bound by the VE's responses to hypothetical questions incorporating a contrary assumption.  Standing alone, this alleged basis for reversal or remand could not stand.  However, on remand, questions to the VE may need to be reframed to account for not only the artificial light trigger, but also for any modifications the ALJ makes regarding the credibility of Plaintiff's subjective complaints.

### 3.      Remand is Appropriate.

Plaintiff requests the Court award benefits. (ECF No. 11, PageID.546.) While the Court finds that the ALJ's decision is unsupported by substantial evidence, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171,

176 (6th Cir.1994); *see also, Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also, Brooks*, 531 F. App'x at 644.

The record fails to establish that Plaintiff is entitled to an award of benefits as there does not exist overwhelming evidence that he is disabled. Moreover, resolution of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance.

## CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to explain the inconsistency between the record and the RFC regarding the triggers of Plaintiff's migraines.  A separate judgment shall issue.

Dated:   January 22, 2016              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE